

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| RONALD TUCKER, | ) | No. ED101728 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | |
| STATE OF MISSOURI, | ) | Hon. David Dowd |
| | ) | |
| Respondent. | ) | FILED: August 25, 2015 |

## Introduction

Appellant Ronald Tucker ("Tucker") appeals from the judgment of the motion court denying his Rule 29.15[1] motion for post-conviction relief following a partial evidentiary hearing. Tucker was found guilty, following a jury trial, of one count of first-degree statutory sodomy and two counts of first-degree child molestation of two victims, B.M. and G.M., and sentenced to ten years' imprisonment. This Court upheld Tucker's convictions and sentence on direct appeal in State v. Tucker, 367 S.W.3d 674 (Mo. App. E.D. 2012). Tucker subsequently filed a Rule 29.15 motion alleging ineffective assistance of counsel, which the motion court denied following a partial evidentiary hearing. On appeal, Tucker contends that the motion court clearly erred in denying his motion because counsel rendered ineffective assistance by (1) failing to file a motion to dismiss the substitute information in lieu of indictment based on the non-specific dates

---

[1] All rule references are to Mo. R. Crim. P. (2013).

provided therein; (2) failing to cross-examine B.M. and G.M. at trial; and (3) failing to object to the expert witness testimony at trial about grooming.

Because counsel made a reasonable strategic decision in declining to file a meritless motion to dismiss, the motion court did not clearly err in denying Tucker's Rule 29.15 motion without an evidentiary hearing as to Point One. Because counsel's decision not to cross-examine B.M. and G.M was reasonable trial strategy in light of the circumstances of the case, the motion court did not clearly err in denying Tucker's Rule 29.15 motion following an evidentiary hearing as to Point Two. Because counsel was not ineffective for failing to make a meritless objection to the introduction of admissible evidence, the motion court did not clearly err in denying Tucker's Rule 29.15 motion without an evidentiary hearing as to Point Three. Accordingly, we affirm the judgment of the motion court.

## Factual and Procedural History

Tucker was convicted, following a jury trial, of one count of first-degree statutory sodomy and two counts of first-degree child molestation and sentenced to ten years' imprisonment. Tucker's convictions arose out of his contact with B.M. (born February 5, 2001) and G.M. (born May 5, 2003), sisters who lived in the same apartment building as Tucker. B.M. and G.M. interacted frequently with Tucker, visiting his apartment and receiving food and candy from him. Tucker would also fix things around the apartment building and often let the girls' mother, Wanda Lee ("Mother"), do laundry in his apartment.

In August of 2009, both B.M. and G.M. told Mother that Tucker had touched their "private parts." B.M. told Mother that Tucker had touched and licked her private parts, pointing to her vagina. Mother knew that was how B.M. referred to the female anatomy. G.M. also told Mother that Tucker had touched her private parts. Mother immediately called the police and

2

took the girls to the hospital. B.M. and G.M. were later brought to the Child Advocacy Center ("CAC"), where they were each interviewed separately about the incidents by forensic interviewers. Both B.M. and G.M. told the interviewers the same story they had told Mother.

Tucker was charged by indictment in September of 2009 with statutory sodomy and child molestation as to B.M. and two counts of child molestation as to G.M. The charged timeframe as to B.M. was between February 5, 2001 and August 13, 2009, and the charged timeframe as to G.M. was between May 5, 2003 and August 13, 2009. On February 14, 2011, Appellant was charged as a persistent misdemeanor offender by a substitute information in lieu of indictment, which listed the same charges and timeframes. The case proceeded to trial.

At trial, Tucker confirmed that B.M. and G.M. frequently visited his apartment and that he often gave them food. Tucker denied ever touching the girls sexually. Tucker also testified that he was friendly with Mother and had done favors for her in the past. Tucker stated that he became upset with Mother when she hinted that she wanted Tucker to help pay her rent.

Recordings of the CAC interviews were played at trial. B.M.'s and G.M.'s testimony at trial was also consistent with what they told Mother and the CAC forensic interviewers. B.M. in particular was very upset during the trial, screaming in the hallway outside of the courtroom prior to testifying and crying during direct examination. Although both girls testified at trial, counsel declined to cross-examine either of them. Counsel did, however, cross-examine Mother.

The forensic interviewer from the CAC who interviewed B.M. also testified at trial, offering testimony about the concept of "grooming." The forensic interviewer's testimony about grooming during direct examination was as follows:

Q. Are you familiar with your training and education, the concept of grooming?

A. I am.

3

Q. And what is that concept?

A. The concept embodies this practice where a person may do a number of things to position themselves in a place of favor with a child or to overcome some inhibitions setting up a greater likelihood that they can then touch a child inappropriately without the child running or saying anything.

Q. Is that why you asked if anything else had been given to her? She had talked about the cat food and then you specifically asked her if anything else.

A. It's part of my practice of trying to remember to ask that for a number of reasons. It may attach an item or an object to allow investigators to come up with a specific date of timeframe as well as it gives a glimpse of perhaps the relationship between the child and the suspect.

Counsel did not object to this testimony and the trial continued. The jury found Tucker guilty of one count of first-degree statutory sodomy and two counts of first-degree child molestation. The trial court subsequently sentenced Tucker to ten years' imprisonment.

This Court upheld Tucker's convictions and sentence on direct appeal in State v. Tucker, 367 S.W.3d 674 (Mo. App. E.D. 2012). Tucker subsequently filed a *pro se* Rule 29.15 motion for post-conviction relief. Appointed counsel filed an amended motion alleging that trial counsel rendered ineffective assistance by (1) failing to file a motion to dismiss the substitute information in lieu of indictment based on the non-specific dates provided therein; (2) failing to cross-examine B.M. and G.M. at trial; and (3) failing to object to the expert witness testimony at trial about grooming.

The motion court held a partial evidentiary hearing solely with respect to Tucker's cross-examination claim. The motion court denied Tucker an evidentiary hearing on his remaining two claims. At the hearing, Tucker and counsel each testified. Counsel explained the reasoning behind his decision not to cross-examine B.M. and G.M. at trial. On June 10, 2014, the motion court entered its Findings of Fact, Conclusions of Law and Order denying Tucker's Rule 29.15 motion. This appeal follows.

4

## Points on Appeal

Tucker presents three points on appeal. First, Tucker contends that the motion court clearly erred in denying his Rule 29.15 motion without an evidentiary hearing as to Point One because Tucker alleged facts not refuted by the record that would entitle him to relief on his ineffective assistance of counsel claim. Specifically, Tucker claims that counsel was ineffective for failing to file a motion to dismiss the substitute information in lieu of indictment because the charging document failed to adequately inform Tucker of the specific dates of the charges against him. Second, Tucker avers that the motion court clearly erred in denying his Rule 29.15 motion after an evidentiary hearing as to Point Two because Tucker proved facts showing that he was denied effective assistance of counsel. Specifically, Tucker argues that counsel was ineffective for failing to cross-examine B.M. and G.M. at trial. Third, Tucker contends that the motion court clearly erred in denying his Rule 29.15 motion without an evidentiary hearing as to Point Three because Tucker alleged facts not refuted by the record that would entitle him to relief on his ineffective assistance of counsel claim. Specifically, Tucker maintains that counsel was ineffective for failing to object to expert witness testimony about "grooming," because such testimony constituted evidence of uncharged bad acts.

## Standard of Review

Appellate review of a motion court's denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15; Day v. State, 770 S.W.2d 692, 695 (Mo. banc 1989). The motion court's findings and conclusions are presumptively correct and will be overturned only when this Court, after reviewing the entire record, is left with a "definite and firm impression that a mistake has been made." Vaca v. State, 314 S.W.3d 331, 334 (Mo. banc 2010).

5

To be entitled to an evidentiary hearing on a post-conviction relief claim, a movant must allege facts, not conclusions, that, if true, would warrant relief; the facts alleged must raise matters not refuted by the record and files in the case; and the matters complained of must have resulted in prejudice to the movant. Barnett v. State, 103 S.W.3d 765, 769 (Mo. banc 2003). An evidentiary hearing is not required if the files and records of the case conclusively show that the movant is entitled to no relief. Id.

## Discussion

To prevail on a claim of ineffective assistance of counsel, the movant must show by a preponderance of the evidence that (1) his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) he was prejudiced thereby. Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To satisfy the performance prong of the Strickland test, the movant must overcome the strong presumption that any challenged action was sound trial strategy. Overcoming this presumption requires that the movant point to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009). The prejudice prong is satisfied only if the movant demonstrates that, absent the claimed errors, there is a reasonable probability that the outcome of the proceeding would have been different. Id.

There is a strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Tucker bears the burden of overcoming that presumption by showing that, in light of the circumstances, counsel's actions were not reasonable trial strategy. Id. A decision made by counsel based on reasonable trial

6

strategy is virtually unchallengeable; rarely will a strategic decision of counsel be declared so unsound as to constitute ineffective assistance of counsel. State v. Sanders, 903 S.W.2d 234, 240 (Mo. App. E.D. 1995); Malady v. State, 748 S.W.2d 69, 72 (Mo. App. S.D. 1988). The reasonableness of counsel's strategic choices must be viewed as of the time the decisions occurred, taking into consideration the circumstances of the case. Strickland, 466 U.S. at 689.

## I. Point One – Substitute Information

Tucker argues he was entitled to an evidentiary hearing on his claim that counsel was ineffective for failing to file a motion to dismiss the State's substitute information in lieu of indictment. The focus of Tucker's argument is that the charging document failed to adequately inform him of the specific dates of the charges against him, making it impossible for Tucker to defend himself. The substitute information in lieu of indictment identified a six-year and eight-year window of time, respectively, for the charges relating to each child. Tucker posits that had counsel filed a motion to dismiss, there is a reasonable probability the trial court would have sustained the motion. We disagree.

Under Missouri law, time is not of the essence in sex offense cases. State v. Bunch, 289 S.W.3d 701, 703 (Mo. App. S.D. 2009). Because time was not of the essence in Tucker's case, the State was permitted to prove that the offense was committed on "any day before the date of the information and within the period of limitation." Id. One reason general allegations of time are permitted in child sex abuse cases, in particular, is that "children who are the victims of abuse may find it difficult to recall precisely the dates of offenses against them months or even years after the offense has occurred." State v. Carney, 195 S.W.3d 657, 571 (Mo. App. S.D. 2006). Further, Section 545.030[2] states that a charging document will not be deemed invalid for

---

[2] All statutory references are to RSMo. 2000.

7

omitting the time at which the offense was committed, or for stating the time imperfectly, in cases where time is not of the essence. Section 545.030.

As a result, any motion to dismiss the substitute information on these grounds would have been unsuccessful. We are mindful that "[t]he decision whether to file a motion is a matter of trial strategy," McArthur v. State, 428 S.W.3d 774, 780 (Mo. App. E.D. 2014), and more importantly, that "[c]ounsel is not ineffective for failing to file a meritless motion." Baumruk v. State, 364 S.W.3d 518, 529 (Mo. banc 2012). Any motion to dismiss filed by trial counsel on the basis of the dates contained in the charging document would have been meritless and ultimately unsuccessful. Accordingly, Tucker failed to allege facts showing that counsel's failure to file a motion to dismiss constituted ineffective assistance of counsel. Because Tucker failed to allege facts that would warrant relief, the motion court did not clearly err in denying his Rule 29.15 motion without an evidentiary hearing. Point One is denied.

## II. Point Two – Failure to Cross-Examine

In Point Two, Tucker asserts that counsel was ineffective for failing to cross-examine B.M. and G.M. at trial about inconsistencies in their accounts of Tucker's alleged abuse. Tucker maintains that had counsel cross-examined B.M. and G.M., the outcome of the trial would have been different. We are not persuaded.

It is well-settled that reasonable choices of trial strategy, no matter how ill-fated in hindsight, cannot serve as a basis for a claim of ineffective assistance. Cole v. State, 152 S.W.3d 267, 270 (Mo. banc 2004). Importantly, the reasonableness of counsel's strategic decision-making must be viewed as of the time the decision occurred, taking into consideration the circumstances of the case. Strickland, 466 U.S. at 689. Tucker bears the burden of overcoming

that presumption by demonstrating, in light of the circumstances, that counsel's decision not to cross-examine B.M. and G.M. was not a reasonable trial strategy. Id.

The extent of cross-examination is generally a matter of trial strategy. Kelley v. State, 24 S.W.3d 228, 233 (Mo. App. S.D. 2000). Further, the decision whether to impeach a witness is presumed to be a matter of trial strategy, and to overcome such presumption, a movant must demonstrate that the decision was not a matter of reasonable trial strategy and that the impeachment would have provided him with a defense or would have changed the outcome of the trial. Wren v. State, 313 S.W.3d 211, 219 (Mo. App. E.D. 2010). As a result, trial counsel's failure to impeach a witness, without something more, does not warrant post-conviction relief. Barnum v. State, 52 S.W.3d 604, 608 (Mo. App. W.D. 2001).

Counsel testified at the evidentiary hearing that his decision not to cross-examine B.M. and G.M. was a matter of trial strategy. Counsel explained that he talked to Tucker before trial about the possibility of not cross-examining the girls depending on their demeanor at trial. Counsel articulated three strategic reasons for declining to cross-examine B.M. and G.M. First, counsel explained that he was wary of alienating the jury by upsetting the girls. This concern was heightened after B.M. became upset before and during direct examination, screaming loudly in the hallway outside of the courtroom before testifying, and crying during her direct-examination. Counsel explained that when dealing with a young child, particularly one who is upset, it is often difficult to extract useful information on cross-examination, and may lead to the child becoming more upset and crying in front of the jury. Counsel felt that in the event B.M. or G.M. became upset, screamed, or cried during cross-examination, Tucker would "lose the case for sure." Second, counsel explained that he felt he could provide the jury with the same information to prove his theory of defense – that Mother had put the girls up to lying about

9

Tucker's abuse – by cross-examining Mother. Counsel did cross-examine Mother at trial. Finally, counsel explained that he felt cross-examining B.M. and G.M. was not necessary to achieve an acquittal because he anticipated that Tucker would testify and contradict the girls' story, and because there was no physical evidence linking Tucker with the charged crimes. For these reasons, counsel decided that not cross-examining B.M. and G.M was the best strategic decision based on the evidence he had before him at that time.

The record reflects that counsel carefully considered the substantial risks associated with cross-examining B.M. and G.M. based upon his professional experience, as well as the overall effect of his decision on Tucker's defense, and made a reasonable strategic decision based on those factors. Counsel's decision not to cross-examine B.M. and G.M, in light of the circumstances of the case, was reasonable trial strategy. Because Tucker failed to show that counsel rendered ineffective assistance by failing to cross-examine B.M. and G.M., the motion court did not clearly err in denying Tucker's Rule 29.15 motion following an evidentiary hearing on this claim. Point Two is denied.

**III. Point Three – Expert Testimony**

Tucker contends in Point Three that the motion court clearly erred in denying his Rule 29.15 motion without an evidentiary hearing because he alleged facts entitling him to relief on his ineffective assistance of counsel claim. Specifically, Tucker asserts that counsel was ineffective for failing to object to expert witness testimony about "grooming," claiming such testimony was evidence of uncharged bad acts that Tucker was grooming B.M. and G.M. in order to facilitate commission of the charged crimes. Tucker claims that had counsel objected to the testimony, the outcome of the trial would have been different. We disagree.

10

Ineffective assistance of counsel will rarely be found in cases where trial counsel has failed to object. Johnson v. State, 330 S.W.3d 132, 139 (Mo. App. W.D. 2010). This is because a failure to object does not rise to the level of ineffective assistance unless the movant has suffered a substantial deprivation of his right to a fair trial. Williams v. State, 783 S.W.2d 457, 458 (Mo. App. E.D. 1990). Further, and more importantly, counsel is not ineffective for failing to make a meritless objection. Middleton v. State, 103 S.W.3d 726, 741 (Mo. banc 2003). Counsel has no duty to object to admissible evidence. State v. Powell, 793 S.W.2d 505, 509 (Mo. App. E.D. 1990).

Expert testimony is intended to assist the jury in areas which are outside of lay experience and is "admissible on subjects about which the jurors lack experience or knowledge." State v. Hayes, 88 S.W.3d 47, 61 (Mo. App. W.D. 2002). The essential test of the admissibility of expert testimony is whether such testimony will be helpful to the jury. Id.

Here, the expert witness, a forensic interviewer for the CAC who interviewed B.M., provided general background information about the concept of grooming, a subject not commonly known to the average juror. The expert witness's testimony about grooming consisted simply of a brief explanation of the concept and application of that concept to explain why she had asked B.M. certain questions during the forensic interview. Such testimony was helpful background information about a sexual abuse concept not understood by the average juror. Thus, the expert testimony about grooming was relevant and admissible. See Whitnell v. State, 129 S.W.3d 409, 414 (Mo. App. E.D. 2004); Martineau v. State, 242 S.W.3d 456, 459 (Mo. App. S.D. 2007). Further, the testimony was not, contrary to Tucker's assertion, uncharged bad acts evidence. The expert witness never testified that grooming is a crime, and in fact did not even suggest that Tucker had groomed B.M.

11

Because the expert testimony was relevant and admissible, counsel had no duty to object to the evidence. Any objection made by counsel to the testimony would have been meritless and unsuccessful. Because counsel was not ineffective for failing to make a meritless objection to the introduction of admissible evidence, Tucker failed to allege facts that would warrant relief on his ineffective assistance of counsel claim. Accordingly, the motion court did not clearly err in denying Tucker's Rule 29.15 motion without an evidentiary hearing. Point Three is denied.

<u>Conclusion</u>

The judgment of the motion court is affirmed.

KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Patricia L. Cohen, J., concurs.

12